In the Matter of the Application of ALFRED ROE et al., as Executors, etc., for Leave to Sell Real Estate.

Where a testator, in creating a trust in real estate, has withheld from the trustees a power of sale and organized the trust for a fixed period, it amounts to a direction that the land, not its proceeds shall be held for the beneficiaries, and a sale by the trustees would be in contravention of the trust, unless an emergency has arisen in which funds are required to save the estate from threatened loss, to improve it, where authority to improve is given, or to prevent serious and increasing injury.

Under the provisions of the act of 1886 (Chap. 257, Laws of 1886), which authorizes a sale of real estate, held in trust, whenever it appears "that it is for the best interest of the estate so to do, and that it is necessary and for the benefit of the estate to raise * * * funds for the purpose of preserving or improving such estate," to justify an order of sale some necessity must be shown to exist for the use of the money in the preservation or improvement of the property which the estate is not in a condition to supply, and which can only be supplied by borrowing upon a mortgage or selling a part and using the proceeds. A sale may not be ordered for the purpose of reinvestment and with a view only to increase the income, even though the real estate be unproductive.

The will of F. created a trust in her executors to receive the rents and profits of the trust estate and the accumulations therefrom, and "after payment of all taxes and assessments and of so much money as may be necessary for repairs, insurance or improvements, or betterments of any or all" of the real estate, to invest the balance as prescribed. An application under said statute for leave to sell certain of the real estate was based solely upon the ground that the sale and reinvestment of the proceeds would result in increasing the trust fund; no necessity for the sale was shown; on the contrary, it appeared the income after all the disbursements authorized, was ample for all the purposes of the trust. *Held*, that an order of sale was erroneously granted; that the improvements contemplated were not of the trust fund, but of the real estate, and of the class indicated by the other elements of the phrase used.

Reported below, 53 Hun, 433.

(Argued February 24, 1890; decided March 11, 1890.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made July 9, 1889, which reversed an order of Special Term granting an application to sell real estate.

This was an application by the petitioners, as trustees under the will of Elizabeth F. Floyd, deceased, for leave to sell three

parcels of land held by them under the following provision of her will:

"*Sixth.*— I give, devise and bequeath to my executors hereinafter named, all real and mixed estate of which I may die seized or possessed in trust, nevertheless, to have and to hold the same during the respective lives of my son-in-law, George Thomas Vingut, and my youngest grandchild, Benjamin Van Horne Vingut, now living, and to receive the rents, issues and profits thereof and the accumulations arising therefrom, and after payment of all taxes, assessments, and of so much money as may be necessary for repairs, insurance or improvements or betterments of any or all of my real estate, to invest the balance remaining after such payments in productive real estate in the city of New York, for the benefit of my grandchildren who may be living at the time of my death during their respective minorities, and for the benefit of such other grandchildren as may be born of my daughter Sarah Augusta Vingut, after my death, during their respective minorities."

The *cestuis que trustent* were all, but one, minors when the application was made.

The grounds upon which the application was made are stated in the opinion.

*John J. Macklin* for appellant. Chapter 257 of the Laws of 1886 is not unconstitutional. (Cooley on Const. Lim. 124.) The court had, independent of the statute, power to authorize the mortgaging of trust property in the cases specified by the General Term. (*U. S. T. Co.* v. *Roche,* 26 N. Y. S. R. 394.) Statutes similar to this are enacted for the purpose of authorizing the mortgaging of real property or converting it into personal, where it appears to the court to be for the best interests of the estate so to do or where a mortgage or sale would best effectuate the purpose of the trust and accomplish objects in the interests of the beneficiaries not otherwise attainable. (Cooley on Const. Lim. 117, 118; Potter's Dwarris on Stat. 73, 74, 231.)

*Thomas T. Sherman* for guardian *ad litem* respondent. The court had no power to make the order of sale. (*Goebel* v.

*Iffla*, 48 Hun, 21; 111 N. Y. 170.) If the statute of 1886 empowers the court to make such an order of sale as the one in question here, the act is unconstitutional and void. (*Brevoort* v. *Grace*, 53 N. Y. 254; *In re P. E. School*, 31 id. 574; 53 id. 259; *Wilkinson* v. *Leland*, 2 Pet. 657.) The constitutionality of the act cannot be upheld with respect to this particular case upon the ground that the sale authorized by it, in so far as it relates to the interests of the infant, is valid, and as to the interests of those *sui juris*, is based upon their consent. (*Embury* v. *Connor*, 3 N. Y. 511.)

*William V. Rowe* for respondents George T. and George F. Vingut.

Prior to and independently of the statute (Chap. 257, Laws of 1886), there was ample power in the Supreme Court, as a court of equity, in the exercise of its general power and jurisdiction over trusts, to grant the relief prayed for in this petition, and to direct a sale of this unproductive property, and a reinvestment of the proceeds thereof, as provided in the will of Elizabeth F. Floyd, deceased, in productive real estate. (Const. art. 6, § 6; 2 Perry on Trusts, §§ 476, 477, 484, 526–528, 552, 764, 820; Hill on Trustees, 471; *Frith* v. *Cameron*, L. R. [12 Eq. Div.] 169; *Cowman* v. *Colquhon*, 60 Md. 127; *Anderson* v. *Mather*, 44 N. Y. 261; 1 Perry on Trusts [4th ed.], §§ 321, 334, 335, 346; 1 R. S. 729, 730, §§ 60, 61, 67; *Perry* v. *Board of Missions*, 102 N. Y. 99, 106; *New* v. *Nicholls*, 78 id. 127; *Cogswell* v. *Cogswell*, 2 Edw. Ch. 231; *Greason* v. *Keteltas*, 17 N. Y. 494; *Newcomb* v. *Keteltas*, 19 Barb. 608; 1 R. S. 730, § 65; *Stevenson* v. *Lesley*, 70 N. Y. 517.) The statute (Chap. 257, Laws of 1886, amending 1 R. S. 730, § 65), by its terms, when considered either alone or as an affirmative and declaratory statute in connection with the pre-existing law, upholding the general jurisdiction of a court of equity over the same subject, clearly justifies and authorizes the present application, and the order of the Special Term thereon, and does not in any respect alter the former law, or general jurisdiction of the court, under which

the petitioners may still proceed, if they so elect. (2 Coke's Inst. 200, 308 ; Bishop on Written Laws, §§ 75, 82, 144, 164 ; 1 Kent's Comm. 464 ; Sedgwick on Stat. & Const. Law, 29, 30.) Assuming that this application and the order of the Special Term are to be justified and supported only by the statute (Chap. 257, Laws of 1886), and that the application is brought clearly within the terms of the statute, and was in every sense properly granted thereunder, the contention which is here made, that the statute is unconstitutional and void by reason of the fact that it attempts to dispose of the interests of adult persons not laboring under any legal incompetency or incapacity, without their consent, is wholly unfounded. The statute is, in fact, subject to no constitutional objection. (Bishop on Written Laws, §§ 75, 82 ; *People* v. *Potter*, 47 N. Y. 375 ; *People* v. *Fancher*, 50 id. 288, 291 ; *Cochrane* v. *Van Surlay*, 20 Wend. 365, 375, 376 ; *Brevoort* v. *Grace*, 53 N. Y. 245 ; *Kerrigan* v. *Force*, 68 N. Y. 385 ; *People ex rel.* v. *Terry*, 108 id. 1, 7 ; *In re N. Y. E. R. Co.*, 70 id. 327, 342 ; *People* v. *Albertson*, 55 id. 50, 54–56 ; *Gage* v. *City of Brooklyn*, 89 id. 196 ; *People* v. *Kenney*, 96 id. 294, 302, 303 ; Cooley on Const. Lim. 180, 181 ; *People* v. *Green*, 58 N. Y. 295, 303 ; *Baker* v. *Braham*, 6 Hill, 47 ; *Embury* v. *Conner*, 3 N. Y. 511, 518, 519.)

FINCH, J. We approve of the construction adopted by the General Term in its examination of the statute under which authority was sought for the sale of the trust estate. (Laws of 1886, chap. 257). Such authority is given whenever it shall appear "that it is for the best interest of the estate so to do, and that it is necessary and for the benefit of the estate to raise by mortgage thereon or by a sale thereof funds for the purpose of preserving or improving such estate." Under this provision some necessity must exist for the use of money in the preservation or improvement of the property which the estate is not in a condition to supply, and which, therefore, can only be supplied by borrowing upon a mortgage or selling a part and using the proceeds. The permission given is in the nature of

an exception to a general rule which the statute itself formulates. It forbids any sale in contravention of the trust. Where the testator has withheld from the trustees power of sale, and organized the trust for a fixed period, it amounts to a direction that the land shall be held for the beneficiaries and not its proceeds, and any sale by the trustees would be in contravention of the trust. But emergencies might arise in which funds would be required to save the estate from threatened loss, or to improve it where authority to improve was given, or it should be needed to prevent serious and increasing injury. To meet that emergency power was conferred upon the court to order a mortgage or sale, but not at all to sell for the mere purpose of reinvestment and with a view only to increase the annual income. That in a given case may be what an adult owner in the free exercise of his ownership would do as a profitable business measure, taking his own risk in the exercise of his own judgment, but such is not the condition or the duty of a trustee holding land for an infant, even though it be unproductive. The land will not run away or burn up or be stolen, and will be sure to await the infant when the period of possession arrives, while if turned into money for reinvestment risks of loss arise, although the trustee be entirely honest. The court, therefore, always hesitates to sell the land of an infant, even where no trust envelopes and protects it, and surrounds the process with all manner of guards and protection, and where it is put in trust and its enjoyment postponed during a period of infancy without a power of sale given to the trustee, it should only be to meet an emergency, to answer a clear and apparent necessity that authority to sell should be given by the court. And that, we think, is the plain meaning of the statute.

It is contended, however, that we should attach to it a different meaning and allow it a wider range, and the contention is supported in an elaborate brief which examines the law before and since the statute, and with an ample collection of the authorities. But the argument comes down to one single proposition, and that is that land may be sold to " improve " the balance of the trust estate, and that increasing its value in

income or principal, or both, is the sort of "improvement" which the statute contemplates. The doctrine puts the court in the position of an owner striving for the greatest possible profit, instead of that of a trustee seeking first and foremost the safety and preservation of the trust estate. It is said the will authorizes the trustees to improve. Its meaning in that respect is not difficult to interpret. Its sixth clause defining the trust provides " after payment of all taxes, assessments and of so much money as may be necessary for repairs, insurance or improvements or betterments of any or all of my real estate to invest the balance," etc. The " improvements " contemplated and authorized were of the real estate, not of the trust fund, and of the class indicated by the other elements of the phrase used. And it is such improvements, rendered necessary in the ordinary and prudent care of the trust lands to which the statute refers.

In the present case no such improvements are shown to be necessary or even to be contemplated. The estate needs no additional money for its preservation. Its net income is $24,000 a year, and ample for all the purposes of the trust besides taxes, assessments, improvements and betterments. The testatrix assumed that it would be, for she contemplated that a surplus of income would remain, and directed that to be invested in productive real estate. She hoped that land would be added by purchase, not parted with by sales. And so the application to the court for an order of sale rested solely upon the ground that such action would probably result in increasing the trust fund. Not the least necessity for a sale was shown; all burdens were and could be easily borne without it, and the reasons for a sale rested only upon a business prediction as to future values. That will not do. There must be something more to justify the interference of the court.

The order should be affirmed with costs.

All concur.

Order affirmed.